UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILEY GILL, et al., <br><br>               Plaintiffs, <br><br>      v. <br><br>DEPARTMENT OF JUSTICE, et al., <br><br>           Defendants. | Case No.  14-cv-03120-RS   (KAW) <br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPLETE ADMINISTRATIVE RECORD** <br><br>Dkt. No. 73 |

In this Administrative Procedure Act case, Plaintiffs have filed a motion to complete or, in the alternative, to supplement, the administrative record.  The Court held a hearing on the motion on December 3, 2015.  Having considered the papers filed by the parties, the relevant legal authority, and the arguments advanced by counsel, the Court GRANTS the motion IN PART and DENIES the motion IN PART for the reasons set forth below.

## I.     BACKGROUND[1]

### A.     The National Suspicious Activity Reporting Initiative

The federal government created the National Suspicious Activity Reporting Initiative ("NSI") to facilitate the sharing of information potentially related to terrorism through the use of Suspicious Activity Reports ("SARs").  (1st Supp. Compl. ("FSC") ¶ 22, Dkt. No. 70.)  The 78 fusion centers located throughout the country serve as the focal points for the initiative—gathering, storing, analyzing, and disseminating SARs through databases that receive financial support from the Office of Justice Programs ("OJP"), a component of the Department of Justice ("DOJ").  (*Id.* ¶¶ 12, 23-25.)  The centers are federally funded and are generally, though not

---

[1] This background is drawn from the allegations in the operative complaint.

always, owned and operated by state or local government entities.  (*Id.*)

The DOJ, through its FBI component, "has set forth the following standard for suspicious activity reporting:  'observed behavior that *may be indicative* of intelligence gathering or pre-operational planning related to terrorism, criminal or other illicit intention.'"  (*Id.* ¶ 54 (emphasis in original).)  This DOJ SAR Standard is described in the FBI's 2008 eGuardian Privacy Impact Assessment ("2008 eGuardian PIA").  (*Id.* ¶ 54, Ex. E.)  It encourages reporting even in the absence of reasonable suspicion of criminal activity.  (*Id.* ¶ 55.)  Under the DOJ SAR Standard, which was allegedly not issued in accordance with the public notice and comment procedures of the Administrative Procedure Act ("APA"), "people acting suspiciously" constitutes a reportable activity.  (*Id.* ¶¶ 57, 70, Ex. F.)

The Program Manager of the Information Sharing Environment ("PM-ISE") is charged with issuing uniform standards for sharing terrorism and homeland security information across federal, state, and local governments.  (*Id.* ¶ 16.)  It has also issued a standard governing SAR reporting, entitled "Information Sharing Environment (ISE) – Functional Standard (FS) – Suspicious Activity Reporting (SAR)" ("Functional Standard").  (*Id.*)  The PM-ISE issued Version 1.0 of the Functional Standard in January 2008, Version 1.5 in May 2009, and Version 1.5.5 in February 2015.  (*Id.*, Exs. D & K; AR at 75-77.)  Functional Standard 1.5 and Functional Standard 1.5.5 do not condition the collection, maintenance, or dissemination of suspicious activity on reasonable suspicion.  (FSC ¶ 42.)  Rather, the standards incorporate a "reasonably indicative" standard for reporting suspicious activity, which as the PM-ISE has purportedly acknowledged, is less demanding than the reasonable suspicion standard.[2]  (*Id.* ¶¶ 44, 45.)  According to Plaintiffs, the PM-ISE did not adhere to the notice and comment procedure set forth in the APA prior to issuing the Functional Standard.  (*Id.* ¶ 42, 52.)

Functional Standard 1.5.5 went into effect immediately upon its publication on February 23, 2015 and is currently in effect.  (*Id.* ¶ 52.)  It defines suspicious activity as "[o]bserved

_____

[2] According to Plaintiffs, both the DOJ and the PM-ISE standards therefore conflict with 28 C.F.R. Part 23, which prohibits the collection, maintenance, and dissemination of criminal intelligence information absent reasonable suspicion of criminal activity.  FSC ¶ 4.

United States District Court
Northern District of California

behavior reasonably indicative of pre-operational planning associated with terrorism or other criminal activity." (*Id.*, Ex. K.)

The PM-ISE and the DOJ train state, local, and tribal law enforcement agencies as well as private entities on the collection of information that may be related to terrorism based on the standard each agency has adopted and the submission of information, in the form of a SAR, either to a fusion center or to the FBI. (*Id.* ¶ 24, 59.)

If a SAR meets Defendants' standards, it is uploaded to one or more national databases. (*Id.* ¶ 26.) One such repository is the eGuardian system, which the FBI oversees and maintains. (*Id.*) Law enforcement personnel and analysts across the country can access eGuardian, and SARs are maintained on the system for 30 years, even if the FBI determines that a SAR report has no connection to terrorism. (*Id.*) Individuals who are the subjects of a SAR are automatically subjected to various degrees of law enforcement scrutiny. (*Id.* ¶ 27.)

**B.      This lawsuit**

On July 10, 2014, Wiley Gill, James Prigoff, Khaled Ibrahim, Tariq Razak, and Aaron Conklin ("Plaintiffs") commenced this action against the DOJ, U.S. Attorney General Loretta Lynch, the PM-ISE, and the agency's head, Kshemendra Paul. (FSC ¶¶ 5-17.)

Wiley Gill ("Gill") is a U.S. citizen living in Chico, California. (*Id.* ¶ 80.) He converted to Islam in 2009, after learning about the religion in a course he took while enrolled at Chico State, where he now works as a custodian. (*Id.*) Gill is the subject of a SAR that identifies him as a "Suspicious Male Subject in Possession of Flight Simulator Game." (*Id.* ¶ 81.)

James Prigoff ("Prigoff") is a U.S. citizen and an internationally renowned photographer of public art. (*Id.* ¶ 101.) While attempting to photograph a famous piece of public art on a natural gas storage tank near Boston, he was harassed by private guards who prevented him from photographing the tank even though he was not, as the guards claimed, on private property. (*Id.* ¶ 103.) Although Prigoff did not provide the guards with any identifying information, the FBI tracked him cross-country, visited his home in Sacramento, and questioned a neighbor about him. (*Id.* ¶¶ 110, 111.) Prigoff believes that the Boston security guards submitted a SAR or SAR precursor report. (*Id.* ¶ 11.)

3

1    Khaled Ibrahim ("Ibrahim"), a U.S. citizen of Egyptian descent, is the subject of a SAR

2   based his attempt to purchase "a large amount of computers." (*Id.* ¶ 118, 121.)  At the time of the

3   purported suspicious activity, he worked as a purchasing agent for Nordix Computer Corporation,

4   and he was attempting to purchase computers in bulk for the company. (*Id.* ¶ 119.)

5    Tariq Razak ("Razak") is a U.S. Citizen of Pakistani descent who works in the bio-tech

6   industry. (*Id.* ¶ 126.)  He is the subject of a SAR pertaining to a "Male of Middle Eastern decent

7   [*sic*] observed surveying entry/exit points" at the Santa Ana Train Depot. (*Id.* ¶ 127.)  Santa Ana

8   Police Officer J. Gallardo filed the SAR. (*Id.* ¶ 130.)  According to Razak, he had an appointment

9   with the county employment resource center, which is located in the station building, and he had

10   not been to the station before, so he spent some time locating the office before meeting his mother

11   by the restrooms and leaving. (*Id.* ¶ 131.)

12    Aaron Conklin ("Conklin") is a graphic design student and amateur photographer with an

13   interest in industrial architecture, including refineries. (*Id.* ¶ 137.)  He has been prevented from

14   photographing oil refineries on two occasions. (*Id.* ¶¶ 139, 143.)  One of those incidents involved

15   the Shell Refinery in Martinez, California. (*Id.* ¶ 144.)  When Conklin attempted to photograph it,

16   he was detained and searched by Contra Costa Sheriff's deputies, who told him he had to be placed

17   on a "NSA watch list." (*Id.*)

18    Plaintiffs assert four claims for relief. (*Id.* ¶¶ 159-168.)  Their first cause of action,

19   asserted against the DOJ and the U.S. Attorney General, is for violation of the APA based on

20   agency action that is arbitrary and capricious and not in accordance with law. (*Id.* ¶¶ 153-158.)

21   Plaintiffs bring the same claim against the PM-ISE and Kshemendra Paul in their second cause of

22   action. (*Id.* ¶¶ 159-162.)  Plaintiffs' third cause of action, asserted against the DOJ and the U.S.

23   Attorney General, is for violation of the APA based on the issuance of a legislative rule without

24   notice and comment. (*Id.* ¶¶ 165-166.)  Plaintiffs assert the same claim in their fourth cause of

25   action against the PS-ISE and Kshemendra Paul. (*Id.* ¶¶ 167-168.)

26    Plaintiffs pray for a variety of declaratory and injunctive relief, including a declaratory

27   judgment that both the PM-ISE's Functional Standard and the DOJ's SAR Standard are invalid, a

28   permanent injunction requiring the rescission of those standards and the ceasing of any training on

1 those standards, a declaratory judgment that 28 C.F.R. Part 23 sets forth the standard for SAR

2 reporting, and a permanent injunction requiring Defendants to employ that standard for SAR

3 reporting.  (*Id.* ¶¶ 1-4.)

   **C.**  **The instant motion**

   After Defendants filed a certified administrative record ("AR") containing "information

considered in the development of the definition of suspicious activity, including the behavior

criteria related to that definition, used in the functional standard to provide guidance to

participants regarding the sharing of ISE suspicious activity reports through the [NSI],"[3] Plaintiffs

filed a motion to complete or, in the alternative, to supplement, the administrative record on

October 1, 2015.[4]  (Notice of Filing AR, Dkt. No. 52, Certification of AR ¶ 3, Dkt. No. 52-1; Pls.'

Mot., Dkt. No. 73.)

   Plaintiffs assert that Defendants certified an AR that is plainly inadequate.  (*Id.* at 11.)

First, they contend that Defendants compiled the AR based on the wrong legal standard, choosing

to include some, but not all, of the information considered in the development of only a portion of

the Functional Standard, namely, the PM-ISE's definition of "suspicious activity."  (*Id.*)  Second,

Plaintiffs assert that Defendants plainly excluded documents that, as reflected in the AR itself, the

agency must have actually considered.  (*Id.* at 12.)  These documents include (1) ISE

Implementation Plan (November 2006), (2) ISE Enterprise Architecture Framework (August

2007), (3) ISE Enterprise Architecture Framework Version 2.0 (September 2008), (4) ISE

Suspicious Activity Reporting Evaluation Environment Segment Architecture (December 2008),

(5) ISE Privacy Guidelines, (6) Privacy and Civil Liberties Implementation Guide for the

Information Sharing Environment, Version 1.0, (7) National Information Exchange Model,

Concept of Operations, Version 0.5 (January 9, 2007), (8) National Strategy for Information

---

[3] Purportedly privileged documents pertaining to the subject were not included in the administrative record.  Certification of AR ¶ 2.

[4] Because, as discussed below, the Court orders Defendants to complete the administrative record according to the correct legal standard, the Court need not address Plaintiffs' alternative request for supplementation.

United States District Court
Northern District of California

United States District Court
Northern District of California

Sharing and Safeguarding (December 2012), (9) Nationwide Suspicious Activity Reporting Concept of Operations (December 2008), (10) NSI SAR Data Repository CONOPS (January 2014), (11) documents related to the Evaluation Environment, (12) findings and recommendations of SAR Support and Implementation Project (June and October 2008) versions, (13) comments and input in formulating and updating the Functional Standard, (14) input and recommendations from the ISE SAR Working Group, (15) input and recommendations by an NCTC-led interagency group, including documents pertaining to its definition of "suspicious activity," (16) input and recommendations from the CTISS Committee, (17) input and recommendations from the ISE-SAR Governance Panel and ISE-SAR Steering Committee, and (18) input and recommendations from working groups formed to implement Guideline 2 of the December 2005 White House memorandum, (19) the October 2007 National Strategy for Information Sharing,[5] (20) Guideline 1 of the White House December 2005 memorandum and documents related thereto.[6]

Alternatively, Plaintiffs argue that two documents should be supplemented because the unanimous recommendations of major law enforcement agencies regarding the applicability of 28 C.F.R. Part 23 to the SAR process were ignored.  (*Id.* at 23-25.)  Plaintiffs also argue that Defendants have wrongfully withheld a number of documents on the basis of privilege and have done so without providing a privilege log.  (*Id.* at 14.)

Defendants filed their opposition to the motion on October 22, 2015.[7]  (Defs.' Opp'n, Dkt.

_____

[5] Defendants apparently do not object to Plaintiffs citing this document in their upcoming summary judgment briefing but have declined to include it in the administrative record.  Pls.' Mot. at 22 n.4.

[6] In addition to these 20 documents/categories of documents, Plaintiffs also request that the Court order Defendants to complete the record with "(a) all internal and external documents regarding the decision-making process for the Functional Standard, including drafts, memoranda, reports, internal reviews and critiques, inter-agency reviews, and e-mail exchanges or other correspondence between and among the agencies and/or others involved in the process; (b) all documents addressing whether 28 C.F.R. Part 23 applies to SARs and the NSI; and; and [*sic*] (c) all documents exploring whether the agency should have pursued formal notice and comment proceedings."  *See* Pls.' Mot. at 13.  At the hearing, the parties agreed to meet and confer regarding specific documents or categories of documents.  In light of this, the Court will deny Plaintiff's request for such materials as premature.

[7] Contemporaneous with the filing of their opposition, Defendants also filed an Amended Certification of the Administrative Record, produced two letters that were identified in Plaintiffs' motion and inadvertently omitted from the AR, provided a revised index of the AR that includes

No. 79.)  They contend that Plaintiffs have failed to meet their burden of showing that the certified

record is incomplete, that the record is appropriately tailored to the challenge Plaintiffs assert here,

that granting the instant motion would be tantamount to allowing discovery, and that deliberative

material was properly excluded from the record without a privilege log.  (*Id.* at 8-9.)  They further

argue that there are no grounds for considering the extra-record evidence Plaintiffs seek to make

part of the AR.  (*Id.* at 16.)  Plaintiffs filed their reply on November 5, 2015.  (Pls.' Reply, Dkt.

No. 82.)

## II.    LEGAL STANDARD

When reviewing agency action under the APA, the court "will reverse the agency action

only if the action is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law."

*Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2004) (citing 5 U.S.C. § 706(2); footnote

omitted).  "An agency's action is arbitrary and capricious if the agency fails to consider an

important aspect of a problem, if the agency offers an explanation for the decision that is contrary

to the evidence, if the agency's decision is so implausible that it could not be ascribed to a

difference in view or be the product of agency expertise, or if the agency's decision is contrary to

the governing law." *Id.* (citations omitted).  "Although [the court's] inquiry must be thorough, the

standard of review is highly deferential; the agency's decision is 'entitled to a presumption of

regularity,' and [the court] may not substitute [its] judgment for that of the agency." *San Luis &*

*Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014).

In considering a challenge, "courts reviewing an agency decision are limited to the

administrative record." *Lands Council*, 395 F.3d at 1029.  Courts must, however, "review the

whole [administrative] record or those parts . . . cited by a party . . . ." 5 U.S.C. § 706.  "The

whole administrative record, however, is not necessarily those documents that the agency has

compiled and submitted as the administrative record.  The whole administrative record, therefore,

consists of all documents and materials directly or indirectly considered by agency decision-

---

the documents, and submitted new copies of other pages of the AR that were either "reduced in
size from the original" or contained inadvertent redactions.  Am. Certification of AR ¶¶ 4, 5 Dkt.
No. 79-1; Freeborne Decl. ¶ 2, Dkt. No. 79-2.

United States District Court
Northern District of California

makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (internal citations and quotations omitted).

"An agency's designation and certification of the administrative record is treated like other established administrative procedures, and thus entitled to a presumption of administrative regularity." *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) (citations omitted).  For this reason, "in the absence of clear evidence to the contrary, courts presume that public officers have properly discharged their official duties." *Id.* (citations omitted).

In limited circumstances, however, the record may be supplemented, i.e., "(1) if admission is necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) if 'the agency has relied on documents not in the record,' (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter,' or (4) 'when plaintiffs make a showing of agency bad faith.'" *Lands Council*, 395 F.3d at 1029 (citation omitted).

"These limited exceptions operate to identify and plug holes in the administrative record," and "are narrowly construed and applied" to ensure "that the exception does not undermine the general rule." *Id.* (citations omitted).  "Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that the federal courts would be proceeding, in effect, de novo rather than with the proper deference to agency processes, expertise, and decision-making." *Id.*

To meet the clear evidence standard, a plaintiff must (1) "identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record," and (2) "identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record[.]" *Winnemem Wintu Tribe v. U.S. Forest Service*, No. 2:09-CV-01072-KJM-KJN, 2014 WL 3689699, at * 10 (E.D. Cal. July 24, 2014) (citation omitted).  "It is insufficient for a plaintiff to 'simply . . . assert [ ] that the documents are relevant, were before . . . [the agency] at the time it made its decision, and were inadequately considered.'" *Id.* (citation omitted; modifications in

original).

## III.    DISCUSSION

### A.    Plaintiffs have sufficiently rebutted the presumption of completeness.

In this case, the parties agree that the administrative record consists of all documents and materials directly or indirectly considered by the agency in making its decision.  (*See* Pls.' Mot. at 9; Defs.' Opp'n at 9.)  Nonetheless, while Defendants concede that an administrative record consists of all documents and materials directly or indirectly considered by the agency in making its decision, the certification filed on June 16, 2015 does not state that all such documents and materials were included.  Rather, the certification reads, in pertinent part:

> 3.    The documents included in the accompanying administrative record index, and provided to the Court, reflect to the best of my knowledge, *information considered in the development of the definition of suspicious activity*, including the behavior criteria related to that definition, used in the functional standard to provide guidance to participants regarding the sharing of ISE suspicious activity reports through the Nationwide Suspicious Activity Reporting Initiative.  The administrative record encompasses documents related to versions 1.0, 1.5, and 1.5.5 of the functional standard.  Privileged documents pertaining to this subject are not included in the administrative record.

(Certification of AR ¶ 3 (emphasis added).)[8]

Despite having provided a certification that suggests noncompliance with the standard according to which an administrative record should be compiled, Defendants nonetheless claim that the administrative record they provided is adequate.  At the hearing, Defendants argued that despite the language of the certification, which they acknowledge may have been poorly drafted, the administrative record nonetheless contains all necessary documents.  In other words, Defendants maintain that even if they were to revisit their compilation of the administrative record to ensure inclusion of all documents and materials directly or indirectly considered by the agency

---

[8] The amended certification filed on October 22, 2015 similarly reads:

> I hereby certify that the supplement to the administrative record submitted herewith, along with the administrative record previously submitted, reflect to the best of my knowledge the non-privileged information *considered in the development of the definition of suspicious activity,* including the behavior criteria related to that definition, used in the functional standard to provide guidance to participants regarding the sharing of ISE suspicious activity reports through the Nationwide Suspicious Activity Reporting Initiative.

Am. Certification ¶ 6 (emphasis added).

United States District Court
Northern District of California

in making its decision, the administrative record would remain unchanged.

Here, Plaintiffs are entitled to test that representation. Because Defendants certified an administrative record that, on its face, appears to contain less than all documents and materials directly or indirectly considered by the agency in making its decision, Plaintiffs have sufficiently rebutted the presumption of completeness. "The application of an incorrect standard constitutes 'reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record.'" *See Winnemem Wintu Tribe*, 2014 WL 3689699, at * 11 (ordering defendants to supplement the administrative record where they had limited its content to "documents and materials relevant to the specific agency actions that are at issue in th[e] litigation[,]" not all documents directly or indirectly considered by the agency); *Trout Unlimited v. Lohn*, No. C05-1128C, 2006 WL 1207901, at *3 (W.D. Wash. May 4, 2006) (defendants' concession that a narrow internal directive guided the compilation of the administrative record sufficed as a prima facie showing of an incomplete record); *People of the State of Cal. ex rel. Lockyer v. U.S. Dep't of Agriculture*, Nos. 05-03508 EDL & C05-04038 EDL, 2006 WL 708914, at *3 (N.D. Cal. Mar. 16, 2006) (planning specialist's certification that the record only included materials that agency officials considered, or those on which they relied, did not "provide sufficient assurance" that alleged omitted documents did not exist).

Accordingly, Defendants shall revisit the administrative record to ensure its completeness. Defendants are advised that merely re-drafting their certification will not constitute compliance with this order. Rather, Defendants shall ensure that they search for all documents and materials directly or indirectly considered by the agency in deciding (1) to adopt a standard that is broader than 28 C.F.R. Part 23 and authorizes the collection, maintenance, and dissemination of information even in the absence of reasonable suspicion of criminal activity, in conflict with 28 C.F.R. Part 23 and (2) to promulgate such a standard without public notice and comment.[9] Given

---

[9] With respect to Plaintiffs' procedural challenge, Defendants have compiled an administrative record notwithstanding their position that the Functional Standard does not constitute a legislative rule subject to notice and comment. *See* Defs.' Opp'n at 3. Given that Defendants have taken this approach, they should have no trouble completing the administrative record with any additional documents on the issue. This is especially true since, as they claim, the administrative record "is complete and ripe for judicial review." *See id.*

United States District Court
Northern District of California

1   that Defendants should have already examined the universe of relevant documents, requiring

2   Defendants to conduct another search should not pose too much of a burden.  Defendants shall

3   also provide a declaration explaining their search and its results.

### B.   Defendants must provide a privilege log.

5   Plaintiffs argue that Defendants improperly withheld a number of documents on the basis

6   of the deliberative process privilege and did so without providing a privilege log.  (Pls.' Mot. at

7   13.)  Defendants contend that deliberative material need not be included in the AR or identified in

8   a privilege log because absent an allegation of bad faith or improper behavior, the subjective

9   motivation for an agency's decision is immaterial.  (Defs.' Opp'n at 14-16.)

10   "Even under the correct standard, some agency documents, such as purely internal

11   deliberative materials, may be protected from inclusion in the administrative record, but

12   Defendants must make a specific showing establishing the application of a privilege for each

13   document that it contends that it may withhold based on privilege." *Lockyer*, 2006 WL 708914, at

14   *4.  In keeping with this rule, courts in this district have required parties withholding documents

15   on the basis of the deliberative process privilege to, at a minimum, substantiate those claims in a

16   privilege log.  *See, e.g., Ctr. of Biological Diversity v. U.S. Bureau of Land Management*, No. C-

17   06-4884-SI, 2007 WL 3049869, at * 6 (N.D. Cal. Oct. 18, 2007) (finding in camera review of

18   purportedly privileged documents appropriate despite declaration formally asserting the

19   deliberative process privilege and explaining the bases for those assertions); *Lockyer*, 2006 WL

20   708914, at *4 (granting the plaintiffs' motion to compel and ordering the defendants to provide a

21   privilege log if withholding any documents on the basis of privilege).

22   Here, Defendants have withheld documents from the AR on the basis of the deliberative

23   process privilege.  They have not provided a privilege log describing the documents, the basis for

24   their withholding, or the grounds that justify asserting the deliberative process privilege.  While

25   Defendants argue that no such privilege log is necessary because deliberative material is, in any

26   event, not part of the AR, they have not pointed to binding Ninth Circuit authority that stands for

27   the proposition that in an APA action, an agency may withhold documents on the basis of

28   privilege without providing so much as a privilege log.  Absent any such authority, the Court will

United States District Court
Northern District of California

11

follow the same approach adopted by other judges in this district.  Therefore, if, while in the process of completing the AR, Defendants wish to withhold certain documents on the basis of the deliberative process privilege, they shall provide a privilege log that describes the document, identifies the basis for its withholding, and substantiates any claimed deliberative process privilege.

## IV.     CONCLUSION

For the reasons set forth above, Plaintiffs' motion to complete the administrative record is GRANTED IN PART AND DENIED IN PART.  Defendants are to revisit their compilation of the AR to ensure that it includes all documents and materials considered by the agency in deciding (1) to adopt a standard that is broader than 28 C.F.R. Part 23 and authorizes the collection, maintenance, and dissemination of information even in the absence of reasonable suspicion of criminal activity, in conflict with 28 C.F.R. Part 23 and (2) to promulgate such a standard without public notice and comment.  If Defendants withhold any documents that should be included in the AR on the basis of the deliberative process privilege, they shall provide a privilege log as set forth above.  Plaintiffs' request for specific documents and categories of documents is DENIED as premature, and the parties are to meet and confer to resolve disputes as to particular documents.

**IT IS SO ORDERED.**

Dated: 12/18/15

_____
KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California